## RICKS *v.* GOODRICH, Curator.

The effect of a deed of trust executed in another State, conveying land situated in that State, and recorded in the parish in which the land lies, must be determined by our laws. C. C. 10. Such an instrument, being an agreement by which mortgaged property is authorized to be sold extra-judicially, is not valid under our laws so far as third persons are concerned, whatever may be its effect between the parties.

Under the roman law, a power to a mortgagee to sell without judicial authority would have been valid, and a sale, after public advertizements and notice to debtors, made under the forms required, would have given a good title to a *bonâ fide* purchaser; but with our hypothecary system the validity of such a power would be incompatible.

APPEAL from the District Court of Carroll, *Copley,* J.

*Browder* and *H. A. Bullard,* for the plaintiff. This is a controversy relative to the title to a large tract of land situated in the parish of Carroll. Both parties claim title under *Gibeon Gibson.* The facts are as follows: *Gibson,* who resided in the State of Mississippi, on the 10th of February, 1838, executed a deed of trust of the land in question, together with other property, in Mississippi, in common law form, to secure the payment of various notes. The deed was in favor of *Winter,* and *T. S. Ayres* was named trustee, in whom the legal title was vested. He was authorized, on the failure of payment, to offer the land for sale in Vicksburg, after public notice, and to sell to the highest bidder. This deed of trust was recorded both in Mississippi, and in the parish of Carroll. The recording in that parish took place on the 27th of March, 1838. It is admitted, that the trustee complied strictly with the terms of the deed. That, on failure of payment, he gave the notice as required, in a newspaper in Vicksburg, and that, at the time and place appointed, he did sell the land, *situated in* the parish of Carroll, which forms the object of this suit, and that the plaintiff *Ricks,* became the purchaser for $3,300. Thereupon the trustee executed his deed to the plaintiff, dated December 21st, 1840, which was duly recorded in the parish of Carroll, on the 2d of May, 1842.

The defendant traces his title in the following manner: *Gibson,* after executing the deed of trust in Mississippi, and after it had been recorded in Carroll, went before a notary public in the parish of Madison, on the 13th of November, 1837, and sold the same land to *James F. Stewart,* who also resided in the State of Mississippi, and whose acceptance of the sale was by an agent. This deed appears to have been recorded two days afterwards in the parish judge's office, but it makes no reference to the mortgage or sale, previously recorded in favor of *Ayres,* as trustee.

It cannot be pretended that *Gibson,* who had already executed a sale to *Ayres,* in the nature of a mortgage, recorded in the place where the land is

situated, could defeat his own deed, by a second conveyance to a person who never went into possession, and who must be supposed to have known of the previous conveyance or encumbrance. Such a proceeding was a manifest fraud, and can convey no right. If the deed of trust conferred only the power of an agent on *Ayres*, to sell and pay over to the creditors of *Gibson*, the act of sale to *Stewart* could not operate as a revocation of the power of attorney especially without notice to the agent. Until notified of such revocation he had a right to proceed, even supposing that it could be revoked at all, which is by no means admitted. The deed to *Ayres* then remained in full force and must have all its legal effect, as if no such sale had taken place to *Stewart.*

As it relates to plaintiff's title the only question for the court to decide is, whether he has become invested with the title of *Gibson*, by the proceedings of the trustee, in a manner not forbidden or reprobated by our law. Our Code, art. 10, lays down the general rule, that the form and effect of public and private written instruments, are governed by the laws and usages of the places where they are passed or executed. But the effect of acts passed in one country to have effect in another country, is regulated by the laws of the country where they are to have their effect. We must therefore look to the laws of Missis-sippi, in order to determine what is the legal effect of a deed of trust there, and then enquire whether, in relation to land situated here, there is any thing in our law which forbids such a form of transfer or alienation of real property. If *Gibson* for example, residing in Mississippi, had made a written contract of sale of the land in Carroll, directly to *Ricks*, and it had been recorded in the parish where the land is situated, there can be no doubt but that such a sale would be good. It is of no importance where the contract is made; it will have its effect here, if made in the form required by our own law. If, instead of doing so, he had given a formal power of attorney to *Ayres*, or any other person, to execute such a sale, it would have been equally valid here, because real estate may be validly sold here by a special attorney in fact. So if he had, in Vicksburg, executed a mortgage in our form, which was recorded here, it would be valid, because not prohibited by our laws, but expressly permitted. If the form had been even according to the common law, yet if it appeared clearly that the intention of the parties was to create an encumbrance on real property, to secure the payment of money, even that would be held to be good, because there is no sacramental form of mortgage. Such mortgages are com-mon in our practice, and they have uniformly been regarded as valid.

When the mortgagor puts the contract in the form of a *vente à rémêré*, or with a condition of defeasance on the repayment of the price, or on the pay-ment of a certain sum, such a contract would embrace all the essentials of a Louisiana mortgage. That a citizen of Louisiana has a right to constitute an agent, with power to sell a particular immovable situated here on the non-pay-ment of a sum of money, at a particular period, we have no doubt. He may be authorized to cause the property to be sold at public auction. There is nothing in our law which forbids it. The question, therefore, resolves itself into this : Was *Ayres* the regular, special agent of *Gibson*, to sell the land in controversy, and did he make the sale under that power, and according to the conditions agreed upon, between the parties ? If so, although the contract was made in Vicksburg, yet being in writing, and for a price, and between compe-tent parties, the sale is good here, as well as in Mississippi.

According to the common law, which prevails in Mississippi, it is per-mitted to add to a mortgage a power to sell, and without the delay, trouble, and expense of resorting to a court of Chancery, to foreclose the mortgage. Such sales are legal, and it is not necessary there should even be a trustee or agent appointed. The mortgagor is not required to join in the deed of sale. Such powers, when a trustee is appointed. are coupled with an interest, and are essentially irrevocable. See the whole doctrine at large in 4 Kent's Com. p. 146, *et seq.* The common law form of a mortgage, as a sale with defeasance, was borrowed from the ancient roman law. Dans les antiquités du droit Romain, says Troplong, le nantissement affectait les formes de la vente. Espece de vente à rémêré, il se contractait par le transport solemnel de la propriété entre les mains du créancier, c'est-à-dire par la mancipation *per æs et libram ;* et la mancipation etait accompagnée d'un contrat de fiducie, c'est-à-dire d'une promesse obligatoire et juridique par laquelle le créanciér s'engageait à rendre la proprieté au debiteur quand ce dernier l'aurait désinterressé. C'est ce que *Boece* appellee *mancipatio fiduciaria.* Troplong, Nantissement, no. 5.

RICKS
v.
GOODRICH.

We have seen in Kent that, at common law, these mortgages with a trustee are legal, and even common, and that the trustee has authority to sell extrajudicially. The statute of Mississippi is formal and positive upon this point. If, however, the trustee refuses to act, a court of equity will compel him. If he can act extra-judicially, in virtue of the authority conferred on him by the debtor himself in the deed of trust, what is he but a simple mandatory or agent of the debtor?

It is urged by the appellant, that the deed of trust was recorded in the parish judge's office in the parish of Carroll, as a *deed*, and not as a mortgage. To this it is a sufficient answer to say, that it was recorded by the same officer, in the same office, and was full notice of a conveyance, such as the deed purports to be. It was notice to the whole world of a sale to *Ayres* of the tract of land, with the condition that the nominal purchaser should be authorized to sell the land at auction, if the debt, for the security of which it was given, should not be paid at a particular time. A subsequent purchaser from *Gibson* complains with bad grace that, although he had notice of this *sale*, he had no notice of any mortgage, because the act was not recorded in the book of mortgages. He must be held to have purchased with notice, and to have acquired no better right than *Gibson* had after executing the deed of trust, whatever may be the legal effect of that deed.

It appears to be fully conceded by the counsel for the appellant that, the deed of trust executed in Mississippi is perfectly legal, that the trustee is authorized to sell under said deed without resorting to judicial authority, and that, if he complies with the conditions of the deed, his sale passes the title. The contract forms the law between the parties. But it is said that such a deed recorded here in relation to lands situated in this State creates only a mortgage, which must be foreclosed by judicial process, according to our laws. It is further contended, that such trustee is not a *mandatory*, because the contract of mandate is essentially revocable. We think this an error. There are mandates by the civil law which are irrevocable. The transferee, for example, of a chose in action, is regarded in law as *procurator in rem suam*. We learn from Pothier, Contrat de Mandat, p. 3, that two things only are of the essence of the contract; *first.* a *negotium* or business, which forms its matter; and *second*, that the parties have manifested their intention to bind each other; the mandatory to render an account, and the principal to indemnify him. But the truth is, the trustee is the common mandatory of the debtor and the creditor. He is answerable to both, and neither can revoke without the consent of the other. Even supposing that *Gibson* alone had power to revoke, it is clear that until such revocation was made known to the mandatory his acts with third persons, without notice, are valid and binding.

The great argument on the other side is, that judicial proceeding was necessary, according to our law, to divest the title of the mortgagor. This appears to us to be a *petitio principii*. If in this State the mortgagor should authorize the mortgagee, or a third person agreed upon by the parties, to sell the property at public sale to satisfy the debt, it is by no means clear that it would not be legal. We are not aware of any law which prohibits it. On the other hand, if the title to land had been divested by judicial proceedings in Mississippi, it might perhaps be doubted whether such proceedings could have any legal effect here. It is not necessary to discuss that question. None such arises in this case. The whole rests upon contract, upon the express consent of the parties without the interference of a court of justice. Such a contract is admitted to be legal in Mississippi, and it must have effect here if not contrary to the policy of our laws, and injurious to the rights of our citizens.

The argument of the counsel for the appellant, rests upon the assumption that, according to our laws, a mortgage must necessarily be enforced or foreclosed by a judicial proceeding, and that parties are not permitted to enter into any stipulation by which that can be dispensed with, and the property disposed of to pay the debt by a common agent of the parties. Is it, then, of the essence of a mortgage by the Code of Louisiana that, on the failure of payment, the mortgaged premises must be sold by authority of justice? We are not aware of any such provision. Undoubtedly the creditor has that right, in the absence of any stipulation on the subject; but it does not follow that the mortgagor, for whose protection that mode of proceeding has been adopted, may not validly dispense with it, and consent that the property shall be sold without judicial authority. The mortgagee could not validly stipulate, per-

haps, that the mortgaged property should belong irrevocably to himself; but, in every other particular, the parties may regulate the matter among themselves, in a way not expressly forbidden by law. We contend that precisely the same contract would be valid in this State, between our own citizens, in relation to land situated here.

There is no doubt that originally, by the roman law, the pledgee or mortgagee might sell the property, if there was an agreement to that effect between him and the mortgagor, although he was forbidden to purchase it himself, either directly or by persons interposed. The authority of Gaius is positive upon this point: II. 64. "Item creditor pignus ex pactione (alienare potest) quamvis ejus ea res non sit; sed hoc forsitan ideo videatur fieri quod voluntate debitoris intelligitur pignus alienari, qui olim pactus est ut liceret creditori pignus vendere si pecunia non solvatur."

*Gibson* himself has no right to complain that the trustee sold in compliance with the conditions in the deed ; and the defendant's intestate, who purchased with full notice, acquired no better right than *Gibson* had.

*Short, Parham* and *Drew*, for the appellant. Both parties now before the court, it may be admitted, are strangers to the deed of trust. But *Ricks*, who purchased at the trust sale made in Vicksburg, must be deemed to have notice of the effect given to the deed of trust by the laws of this State, where the land is situated. The contracts by virtue of which *Ricks* claims title were made in Mississippi and between citizens of Mississippi, but they were to have their effect on lands in this State. They must then be construed by the laws of this State. C. C. art. 10. Story, Con. Laws, p. 300, et seq. We contend : 1st. That, construed by the laws of this State, the deed of trust did not divest *Gibson* of title. The utmost effect that can be given to it is, that of a lien in the nature of a mortgage. 2d. That the title could not pass by the trust sale, made in Mississippi, because that trust sale cannot be taken as a foreclosure of mortgage. The mortgage must be foreclosed according to the laws of this State, in order to extinguish *Gibson's* title. 3d. The purchaser from *Gibson, J. F. Stewart*, after the execution of the deed of trust, but before the sale made by *Ayres*, the trustee, acquired a right in the land that could not be affected by the trust sale, to which he was not a party.

What effect then has a deed of trust, when construed by the laws of this State ? Contracts in relation to their substance, are either principal or accessory. The contract of sale is a principal contract, by which one gives a thing for a price, the other gives the price to have the thing itself. C. C. art. 2414. The accessory contract assures the performance of a principal contract, such as suretyship, mortgage, or pledge. C. C. arts. 1760, 1764. It does not transfer the thing itself upon which it operates—it only gives a right upon it. A mortgage is a right granted to a creditor over the property of his debtor, for the security of his debt ; and gives him the power of having the property seized and sold, in default of payment. C. C. art. 3246. It assures the performance of the principal contract. Testing the deed of trust by these provisions of the Code, it will be found not to be a sale, either absolute or conditional. The contract is not a principal, but an accessory one. The utmost effect that can be given to it is, that of a mortgage right in favor of *Winter*, the *cestui que trust*. If no title passed from *Gibson* at the date of the deed of trust, it is equally clear that none passed by the trust sale, made in Mississippi, on the 21st of December, 1840.

We contend, that the act of the trustee in making the sale in Mississippi, cannot be taken for a foreclosure of the mortgage. Admitting that, if the land had been situated in Mississippi, the trust had been well executed, according to the laws of Mississippi, still, as the land was situated here, where the contract was to have its effect, and the contract, by our laws, being an accessary one, the mortgage must be foreclosed, and the right acted upon by our courts. If our laws give to the instrument the effect of a mortgage, then the incidents follow : it must be recorded as a mortgage, and foreclosed as a mortgage, in the manner known to our laws.

Two positions are relied on by the appellee, to sustain his title under the deed of trust: 1st. That such trusts are naked trusts, not prohibited by the Code. 2d. That the deed of trust can be assimilated to a mandate. It may be admitted that naked trusts are not directly prohibited by the Code. Neither are executory devises prohibited by the Code directly, *eo nomine ;* yet they are substitutions, and under that name are prohibited. C. C. art. 1507. The late

RICKS
*v.*
GOODRICH.

Supreme Court were frequently called upon to act upon deeds of trust, executed in other States. *Morgan et al.* v. *Their Creditors.* *Mathurin* v. *Livaudais.* *Hope* v. *The State Bank.* *Malone* v. *Barker.* *Jordan* v. *Black.* 6 N. S. 392. 4 La. 215. 1 Rob. 575. 2 Rob. 369. In all these cases, the contracts creating the trusts were executed in other states, and the only point the court was really called on to decide was, whether contracts, being valid by the laws of the state where made, were not to be held equally valid here, as to property brought here subject to the trust. The court recognized the validity of such title as the trustee had under the laws of the state where the deed was executed, when claiming the property here, for the purposes of the trust.

But can the deed of trust be assimilated to a mandate? It is of the nature and essence of a mandate to be revocable. C. C. art. 2945, et seq. It will be difficult to make the deed of trust in question, fall into this category of contracts. If it should be assimilated to a mandate, then we say the power was revoked: 1st. By the suit instituted by *Gibson*, in the parish of Carroll, on the 21st of October, 1839, to vacate the deed of trust. 2d. By the sale of the land by *Gibson*, the principal, on the 13th of November, 1839, to *Stewart.* The deed was recorded on the 15th of November, 1839. *Ayres* made the sale to *Ricks*, on the 21st of December, 1840, by virtue of a power of attorney, executed on the 10th of February, 1838.

The judgment of the court was pronounced by

EUSTIS, C. J. The question presented by the facts of this case relates to the legal effect of a deed of trust, executed in the State of Mississippi, and recorded in the parish of Carroll, where the land in controversy is situated. The date of the deed is the 10th of February, 1838, and of the record the 27th of March following. It appears by the certificate of the parish judge, to have been recorded in the *book of deeds* so called. The deed of trust purported to convey to the trustee this tract of land, with a large quantity of land and negroes in the State of Mississippi, in order to secure the payment of a large debt due by the grantor to a third person, *Thacker W. Winter*, of Mississippi; and on default made by the debtor, in conformity with the conditions of the deed of trust, the trustee sold this land at public auction in the town of Vicksburg, and the plaintiff, *Ricks*, became the purchaser. The deed to him bears date the 21st of December, 1840, and was recorded in the parish of Carroll, on the 2d May, 1842. After executing this deed of trust, *Gibson*, the grantor, sells the same land before a notary public in the parish of Madison, on the 13th November, 1839, to the late *James F. Stewart.* The act was recorded in Carroll two days afterwards. The purchaser under the deed of trust is the plaintiff, and the curator of the succession of *Stewart* is defendant, both claiming the title to the land; the former had judgment, and the defendant has appealed.

The validity of the sale to *Stewart* is said to have been impossible by reason of the deed of trust, which had been previously executed by the owner of the land, and the subsequent *bonâ fide* purchase under it by the plaintiff is said to create a complete adverse title in him, superior to that acquired by *Stewart*. The parties were all citizens of Mississippi, and the contract and its obligations have been considered in argument with reference to the laws of that State; and its effect and validity under our own laws has also been carefully examined by counsel.

In the State of Mississippi a court of equity would hold the deed under consideration to be a mere mortgage, with a power of foreclosure out of court. It must be conceded that the effect of this deed must be determined under the laws of Louisiana (Civil Code, art. 10); and the counsel for the plaintiff has contended that there is nothing in the instrument which conflicts with them, that the power to sell given to the trustee is valid as an ordinary mandate, and

no judicial proceeding is necessary, under our law, to divest the title of the <span>RICKS<br>v.<br>GOODRICH.</span>
mortgagor.

If the deed of trust be considered as an ordinary mandate it must be taken as revoked by the sale to *Stewart*, and the record of that sale was notice of the fact. But we cannot assent to the proposition of the learned counsel that an agreement by which a mortgagee is authorized to sell mortgaged property extrajudicially, is valid under our laws. Whatever may be the validity of such an agreement between the parties, so far as the rights of third persons are concerned, we think it would be without effect. It is true, as stated by the counsel for the plaintiff, that under the roman law a power to the mortgagee to sell without judicial authority would have been valid, and a sale after public advertisements and notice to the debtor made under the forms required, would have given a good title to a *bonâ fide* purchaser. Droit Romain, par Mackeldey, § 317. But with our hypothecary system the validity of such a power would be incompatible. Troplong has given his views on this subject with reference to the Code Napoléon, and has given what may be considered a history of the question as it has been settled in the jurisprudence of France. They are equally applicable to the Louisiana Code, and we consider them conclusive. Troplong, Traité des Priviléges et Hypothéques (art. 2169), no. 795.

The judgment appealed from is therefore reversed, and judgment is rendered in favor of the defendant; and it is decreed that the land in controversy belong to and make part of the succession of *James F. Stewart*, and be inventoried; and that the plaintiff pay the costs in both courts.