### RICHARD TERRELL et al. *v.* JAMES J. ALLEN.

The father held certain slaves under a deed of trust executed in Mississippi, binding him to
hold them for the use and benefit of a son and daughter, and upon the majority or mar-
riage of the children, to execute a conveyance to them. He removed to Louisiana, and
by some means, parted with the possession of the slaves. They were subsequently
transferred several times ; suit was instituted by one of the children, and the heirs of the
other, for the slaves, against the person who, at the time, had them in possession. The
defendant and his warrantor, proved more than ten years' possession in good faith, and
under a just title. *Held:* The legal title to the slaves was vested in the father by the
deed of trust. When brought by him to this State, they became subject to our laws,
which recognize no such right of property as that claimed by the plaintiffs.

APPEAL from the District Court of Lafourche, *Randall,* J. *C. A. Johnson,*
for plaintiffs. *J. C.* and *A. B. Beatty,* for defendant. *Winchester Hall,*
for warrantor. The judgment of the court *(Slidell,* J., absent,*)* was pro-
nounced by

EUSTIS, C. J. This appeal is taken by the plaintiffs from a judgment ren-
dered against them in favor of the defendant, in the court of the fifth district.
The plaintiffs brought their action for the recovery of the slave *China,* and her
issue, together with her wages for a series of years. *Richard Terrell* claims one
undivided half interest in the slaves, in his own right ; the other plaintiffs claim in
the right of *Louisa Terrell,* deceased. *Richard Terrell* and *Louisa Terrell* were
children of *Richard Terrell.* Their father, it seems, held the slave *China,* and
certain other slaves, under a deed of trust, as it is called, executed in Adams
county, in the State of Mississippi, on the 24th of March, 1822, where *Terrell*
and his wife resided. They afterwards removed to this State with their house-
hold and slaves, and resided in New Orleans. The deed purported to sell and
convey, for and in consideration of the sum of twenty-two hundred dollars, paid
in hand, eight certain slaves, of whom the said *China* was one, to *Richard
Terrell,* with a covenant on his part, that he is to hold the slaves for the use
and benefit of his, the said *Terrrell's* daughter and son, *Louisa* and *Richard,*
until they shall become of lawful age or be married : that is, until either should
be of age, or the said *Louisa* should be married; in which event, the said *Ter-
rell* binds himself to make to each, a full title to one undivided half interest on
the slaves. In the event of the death of either, before their majority or mar-
riage, the right to the slaves was to vest in *Richard Terrell.*

The slave *China,* it appears, was sold at sheriff's sale in the parish of La-
fourche Interior, on the 18th of April, 1831, under an execution issued on the
judgment in favor of *James Porter* v. *Stephen* and *Rezin Bowie,* and *Alexander
Thomasson* became the purchaser, for the sum of six hundred dollars. *Thom-
asson* sold her to *James A. Scudday,* and *Scudday* sold her to the defendant,
*Allen.*

We find nothing in the evidence, impugning the good faith of the defendant
or his vendors, in relation to the title of the slave, and we consider the posses-
sion in them to have been uninterrupted from the date of the sheriff's sale,
April 18, 1831. It does not appear that *Terrell,* the father, ever made any title
for the slaves to either of his children, and so far as any right by inheritance from

him is relied upon, it is obvious that his claim to the slaves were extinguished by the prescription of five years during his life time. Art. 3444, C. C.

The legal title to the slaves was vested in *Richard Terrell* by the deed of trust. He brought them to this State, and they became subject to our laws, which recognize no such right of property as that claimed by the plaintiffs. Our views on this subject are fully expressed in the case of *Harper* v. *Stanbrough*, 2d Ann. 380. We have constantly before us the danger of deviating from the principles established in that case, and of introducing modifications of the right of property, established by a system of jurisprudence, to which our code is directly opposed.

The judgment of the district court is therefore affirmed, with costs.