CALIFORNIA FRUIT EXCHANGE v. MEYER, INC.

(July 14, 1927.  Opinion and Decree.)
(October 3, 1927.  Rehearing Refused.)
(April 10, 1928.  Decree Supreme Court on Writ of Certiorari and Review.  Judgment Affirmed.)

(*Syllabus by the Court*)

1. **Louisiana Digest—Sales—Par. 1.**
Whatever may be the rule in common law states, in Louisiana, we do not recognize "divided incidents of ownership" subsisting in the buyer and seller of personal property.  Here the perfection of a contract of sale confers upon the buyer full, absolute and exclusive dominion over the thing sold.

2. **Louisiana Digest—Sales—Par. 58, 116.**
The rule that delivery of goods by the vendor to the carrier constitutes delivery to the buyer, does not apply where, from any cause, the provision of the contract of sale relative to delivery, is not complied with.

3. **Louisiana Digest—Sales—Par. 58, 11, 116.**
The delivery by a vendor of a car of peaches to a railroad in California, consigned to the vendor in New Orleans, under a bill of lading in the shipper's name with instructions to notify the buyer in New Orleans, is not in accord with a contract calling for delivery F. O. B. California or "California acceptance" and will not serve to transfer the property in the peaches to the buyer so as to impose the risk of transportation upon him.

Appeal from Civil District Court for the Parish of Orleans, Division "D."  Hon. Porter Parker, Judge.

Action by California Fruit Exchange against John Meyer, Inc.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Spencer, Gidiere, Phelps & Dunbar, of New Orleans, attorneys for plaintiff, appellant.

Edgar M. Cahn, of New Orleans, attorney for defendant, appellee.

WESTERFIELD, J.  Plaintiff, through its local agent, sold defendant a car of peaches to be shipped from California. There is some dispute as to whether the delivery was to be made in California or New Orleans, but we are convinced that the agreement was for "California acceptance," which, we are advised, means that defendant was to assume the risk in transit.  The peaches were shipped consigned to plaintiff with instructions to notify defendant, or as it is termed "ship-

per's order notify." Upon arrival defendant rejected the peaches, whereupon they were sold at a loss equal to the amount sued for herein, ($407.14). It will be observed that plaintiff, the vendor of the peaches, did not consign the shipment to defendant, the purchaser, but obtained a bill of lading in its name, as consignor, and consignee, thus retaining control over the peaches en route.

The question is whether such shipment is in conformity with the contract and constitutes a delivery to defendant in California, so as to transfer title to the peaches to defendant with consequent risk of transportation to New Orleans.

It will be conceded, as beyond controversy, that if the peaches had been delivered to the carrier consigned to defendant, such delivery would amount to an appropriation of the peaches to the contract and would have placed the risk of transportation upon the buyer. Plaintiff chose to ship the peaches to itself, doubtless for the purpose of securing the selling price. Does this action of plaintiff bring the case without the rule, res perrit domino? The propriety of defendant's action in rejecting the peaches, and the amount of damages claimed is not questioned, assuming delivery was made in California under the contract.

The way bill was inscribed with the legend "permit inspection before unloading without bill of lading. Deliver without bill of lading on written order of California Fruit Exchange."

This inscription on the way bill emphasized the intention of plaintiff to retain control over the shipment en route, and negatives any idea that there was any appropriation of the goods to the contract in California. The Uniform Bill of Lading Act, which has been adopted in this State (Act 92 of 1912) contains the following of interest here:

"Where the goods are shipped by the consignor in accordance with a contract or order for their purchase, the form in which the bill is taken by the consignor shall indicate the transfer or the retention of the property or right to the possession of the goods as follows:

"(a) Where by the bill the goods are delivered to the buyer or to his agent, or to the order of the buyer, or of his agent, the consignor thereby transfers the property in the goods to the buyer.

"(b) Where by the bill the goods are deliverable to the seller or to his agent, or to the order of the seller or of his agent, the seller thereby reserves the property in the goods. But if, except for the form of the bill, the property would have passed to the buyer on shipment of the goods, the seller's property in the goods shall be deemed to be only for the purpose of securing performance by the buyer of his obligation under the contract."

It is contended that the last paragraph of subsection (b) to the effect that "if, except for the form of the bill, the property would have passed to the buyer on shipment of the goods, the seller's property in the goods shall be deemed to be only for the purpose of securing performance by the buyer of his obligation under the contract" is applicable here. This provision of the Uniform Bill of Lading Act was copied from Mr. Williston. See Williston on Sales, Sec. 281. Our attention is called to the following interesting excerpt from the Harvard Law Review (34, p. 750):

"When a seller ships goods to the order of a buyer, or with a view to perform a prior contract with a buyer, and takes the bill of lading to his own order, his purpose in so doing is merely to secure payment of the price. The situation is in legal effect the same as if he had absolutely transferred title to the buyer and the buyer had mortgaged back that title to the seller to secure payment of the price. It has seemed hard for the courts

to understand that both seller and buyer have incidents of ownership. It is too often apparently taken for granted that one party or the other must have title, and that the other can have only a contract right; yet the illustrations in the law of divided incidents of ownership are so numerous that there seems little excuse for misunderstanding."

We are referred to Standard Casing Co., Inc., vs. California Casing Co., Inc., 233 N. Y. 413, and Rosenberg Bros. & Co. vs. Buffan Co., Inc., 234 N. Y. 338, and numerous other cases from other jurisdictions as examples of courts which have solved the difficulty in understanding "the law of divided incidents of ownership" and are no longer lost in the fog of inexcusable misunderstanding. We quote from the last cited case the following:

"We held in Standard Casing Co., Inc., vs. California Casing Co., Inc., 233 N. Y. 413, 135 N. E. 834, that upon a sale F. O. B., title passes to the seller from the moment of delivery to the carrier; that the rule is subordinate to intention, but that the fact that the bill of lading is made out to the seller or order does not indicate an inconsistent intention. The case cited is conclusive on the. question of delivery."

In confessing ourselves within the ban of the author's criticism, we might say in extenuation that there is in the Civil law a very different view of ownership from that which obtains at common law, as we shall shortly demonstrate but, candor compels the acknowledgment, that in the rule announced by Mr. Williston, and approved by the courts referred to, for whom we have the highest respect, we find no justification in equity or expediency. To charge a buyer with all the responsibility of ownership and accord him none of its privileges, does not seem fair to us. The seller retains the jus desponendi and can divert the shipment at any time before arrival at destination.

It is his property in every respect except as involving responsibility for loss. He sells it and yet owns it, thus proving that in commerce, unlike gastronomics, it is not impossible to eat your cake and have it too. If there is any sound commercial reason for this innovation, it has escaped us. The price must be secured it is said. If so, the contract can stipulate many methods of securing it, but when the agreement of sale contemplates credit, we see no objection to such provision. We seem to have heard somewhere the remark that business is based on credit. It will be objected that we are dealing with a statute of Louisiana which declares that the form of the bill of lading is immaterial where, but for the form title would have passed to the buyer. Well, we don't know what this means, but feel that we know what it does not mean, in the light of our system of law and jurisprudence. The courts of the common law states, expressing views contrary to our own, are not concerned with the provisions of our Civil Code nor the principles of the Civil Law.

"Ownership is the right by which a thing belongs to some one in particular to the exclusion of all other persons." R. C. C. 488.

"The ownership of a thing is vested in him who has immediate dominion of it, and not in him who has a mere beneficiary right to it." R. C. C. 489.

"The general idea of property under the Roman law and our own is that of simple uniform and absolute dominion. The subordinate exceptions of use, usufruct, and servitudes are abundantly sufficient to meet all of the wants of civilization, and there is no warrant of law no reason of policy for the introduction of any other." Eustis C. J. in State vs. McDonogh, 8 Ann. 171.

"Those titles (Civil law titles of ownership) and the modification of the rights of ownership under our laws are few and easily understood, they answer all purposes of reasonable use; and it is the duty

of the courts to maintain them in their simplicity. The gravest consequences, the most dangerous confusion, and the disturbance of public order must follow any attempt to introduce within our limits with all their train of intricate, and except for the initiated, unintelligible modes and distinctions, the titles to property supported by the complicated and involved jurisprudence of the common law states." Penny vs. Christmas, 7 Rob. 481; Ricks vs. Goodrich, 3 La. Ann. 212; Hayden vs. Nutt, 4 La. Ann. 65 and 70; State vs. Bailey, 4 La. Ann. 376; Terrell vs. Allen, 7 La. Ann. 46; Succ. of Franklin-Adelicia Acklen and child Emma, vs. Franklin, 7 La. Ann. 395; Xiques vs. Bujac, 7 La. Ann. 498; State of Louisiana, State of Maryland vs. The Executors of McDonogh and City of New Orleans, 8 La. 171.

In Louisiana a sale transfers to the buyer the full ownership of the thing sold. The seller has no "incident of ownership."

It is very doubtful whether the weight of authority in the common law states is with counsel. We quote the following note appearing in 2 L. R. H. (N. S.) 1078:

"Since the intention of the parties is the ultimate criterion of the question of whether or not the title passes upon the delivery of the goods by the seller to a common carrier, the fact that a draft for the purchase price is attached to the bill of lading is not necessarily decisive under any circumstances but is of considerable importance under some circumstances as illustrating the intention of the parties. Its importance in this respect depends a good deal upon the fact whether, by the terms of the bill of lading, the goods are deliverable to the purchaser, or to the order of the seller (or a third person). As pointed out in the opinion in Hamilton vs. Joseph .Schlitz Brewing Company, (104 N. W. 438, the case annotated), and the authorities there cited, the fact of making the bill of lading deliverable to the order of the seller is of itself almost decisive, in the absence of evidence to the contrary, to show his intention to reserve the jus disponendi, and thus to prevent the title from passing to the purchaser at the time of the delivery of the goods to the carrier. The attaching of a draft for the purchase price to such a bill of lading merely strengthens or corroborates the inference that it was not intended that the tile should pass, whicch, in the absence of countervailing circumstances, could be drawn without its aid from the form' of the bill of lading."

In Bruno vs. Phillips, 143 N. E. 21, the Supreme Court of Indiana observes:

"That a bill of lading for the property sold is taken in the seller's name when not rebutted bycontrary evidence is decisive to show the seller's intention to preserve the jus disponendi to prevent the property from passing to the buyer." See also Machen on Sales, Vol. I, p. 648.

In the case of Dows, et al., vs. National Exchange Bank, 91 U. S. 618, the Supreme Court of the United States said:

"That such is the legal effect of a bill of lading taken deliverable to the shipper's own order, that it is inconsistent with an intention to pass the ownership of the cargo to the person on whose account it may have been purchased, even when the shipment has been made in the vessel of the drawee of the drafts against the cargo, has been repeatedly decided * * *."

Plaintiff can not recover because he violated his contract, calling for delivery in California. In Williston on Sales, we find the following:

"In order to make the rule (that delivery to the carrier constitutes a transfer of the property) applicable, however, the seller must have acted in conformity with the authority given him by the buyer. If, therefore, the goods which he sends are not those ordered, or even if there are too many, or too few, or they are sent at a materially different time, or by a different route or method of shipment, or misdirected, the property will not pass. Moreover, the seller must not only observe the express terms of the order or contract, but must also fulfill such obligations as the law imposes, irrespective of express bargain."

In Woodbine Company vs. Goldnomer, 121 S. W. 449, the Supreme Court of Kentucky ·held:

"Where a buyer of clothing directed it to be delivered for the spring trade and be shipped over a certain railroad, a delivery by the seller to a different railroad for transportation did not constitute a delivery to the buyer, though the carrier named had no connection with the point of shipment, the seller not having notified the buyer and given him an opportunity to select another carrier."

In Lundy vs. Pfeifer, 162 La. 355, 110 So. 556, the Supreme Court of Louisiana held that an apparently inconsequential variance in the bill of lading constituted a breach of the shipper's contract preventing recovery. In this case the contract obligated Lundy to ship to his own order, notify Pfeifer & Co. He shipped to his own order but instead of notifying Pfeifer, the bill of lading carried instructions to notify Lundy, the shipper. This slight departure from the agreement was held to be fatal * * * We quote from the opinion—

"In this case S. Pfeifer & Co. agreed to buy, and Aaron Lundy agreed to sell, approximately 60,000 pounds of red kidney beans; that the beans should be loaded in a car and shipped by Lundy some time during the months of September or October, 1920, and not later than October 31, 1920, plaintiff to take out a bill of lading for the shipment, to his own order, with instructions to notify Pfeifer & Co. This Lundy did not do. The record shows that the car was loaded on the Pacific coast on October 30, 1920. or within the time stipulated in the contract, but it does not appear when the car was actually moved. The record also shows that the bill of lading routing the car to New Orleans to the shipper's order contained instructions to the carrier to notify A. L. Lundy. The district judge says:
" 'If he had taken out 100 cars in that manner on that day he would not have fulfilled his obligation under the contract.'
"On November 6, 1920, a bill of lading in accordance with the terms of the contract was obtained by Lundy, and in explanation of why he had thus acted after the term fixed in the contract for the shipment had expired, he says he was prompted to do so by a desire to keep his competitors in business in ignorance of the names and location of his patrons. This excuse cannot be accepted as justifying or palliating his violation of the unquestioned terms of the contract. The facts do not appear to be controverted, and therefore it is not necessary to review the testimony. Plaintiff violated the contract, and his belated attempt to rectify the error was made too late. As he bound himself, so shall he be bound."

For the reasons assigned the judgment apealed from is affirmed.