STANBROUGH<br>v.<br>BARNES.

---

## HARPER v. STANBROUGH.

Every government has the right to establish and regulate the rights of property in things within its jurisdiction, in such manner as the public interest may require.

Where a testator dying in another State, possessed of slaves there, directs that, if either of his two sons, to whom his property had been bequeathed, " should die without a lawful heir, his part, real and personal, shall go to the survivor," and one of the sons receives his portion of the slaves and removes with them into this State, and dies without issue, the survivor cannot recover them, nor their increase here. The clause on which plaintiff's claim rests, though it might confer a title on the survivor by the laws of the State where the testator died, as it creates a substitution, cannot be enforced here. Such a testamentary disposi-tion cannot operate on property within this State. Code of 1808, b. 3, tit. 2, ch. 4. C. C. 1507.

| 2 | 377 |
|---|---|
| 52 | 51 |
| 2 | 377 |
| d109 | 995 |
| 2 | 377 |
| 119 | 280 |

APPEAL from the District Court of Carroll, *Curry*, J. This is an action to recover certain slaves, claimed by plaintiff as the surviving son of one *Har-per*, who died in the State of Mississippi, in the year 1811. His will, dated 9th August, 1811, contains the following bequest : " I give to my two sons *Jes-se* and *William*, all my lands, to be equally divided between them; if either of my sons should die without a lawful heir, his part, real and personal, to the sur-viving one." *Jesse Harper* removed, with his portion of the slaves so be-queathed, into this State, in the year 1823. In 1838, he died here, without is-sue. This action was instituted by the surviving brother, to recover the slaves originally bequeathed to *Jesse Harper*, with their increase. The plaintiff ap-pealed from a judgment in favor of the defendant. A copy of *Harper's* will, which was offered in evidence on the trial, was excepted to on the ground that it had never been ordered to be executed by the probate court of the parish in

HARPER
*v.*
STANBROUGH.

which the property is situated. The copy was admitted. Plaintiff also offered in evidence, sec. 23 of chap. 104 (p. 458), sec. 24, chap. 9 (p. 34), sec. 45, chap. 73 (p. 379) of the Revised Code of Mississippi.

*Thomas, Snyder, Prentiss* and *Finney*, for the appellant. Two questions arise: 1st. Was the will of *Jesse Harper, senior*, properly admitted in evidence? 2d. If properly admitted, does it sustain plaintiff's claims to the slaves in controversy? The whole case turns upon the validity and effect of the will. Its construction, validity and effect are governed by the laws of Mississippi, where it was made, and where the property upon which it operated, was found, at the time of the testator's decease.

1st. As to the admissibility of the will, as evidence of plaintiff's title, in the courts of this State. The will was duly probated in Mississippi, before the proper tribunal, and the transcript of the proceedings of the Mississippi tribunal are properly and duly certified. It was not necessary to have the will probated here. 6 Mart. N. S. 622. 17 La. 4. Story's Confl. Laws, § 238-9. We do not ask the execution of the will in this State, but offer it as evidence of our title to the property sued for, which title originated in Mississippi, though the contingency upon which it vested happened here. It is well settled that a foreign will is admissible in evidence to show title, without ever having been probated here, provided it has been received, and its execution ordered, by the proper tribunal of the country in which it was made. *Balfour* v. *Chew*, 5 Mart. N. S. 517. The point is still more directly decided in *Johnson* v. *Rannels*, 6 Ib. N. S. 621. The doctrine is also recognised in *Robert* v. *Allier's agents*, 17 La. 5. If this is true as regards foreign wills, when set up as the foundation of title to property located here at the time the will took effect, still more strongly will the rule apply when the property was located in the country where the will was made, and removed since the probate there. There can be no doubt the will was properly admitted in evidence.

2d. Does the will sustain the plaintiff's claim to the slaves in controversy? The will was executed in Mississippi, and took effect upon the slaves before their removal from that State. The removal of the property by one of the legatees could not destroy the rights of the other. What then are those rights? After various bequests, among which is one of the negroes in controversy, to *Jesse Harper, junior*, and another of several slaves to plaintiff, the testator says: "After that, I give to my two sons, *Jesse* and *William*, all my lands to be equally divided between them; if either of my sons should die without a lawful heir, his part, real and personal, to return to the surviving one," &c. This is the clause under which plaintiff claims. The contingency under which the devise over to the survivor of the two sons was to take effect, to wit: "dying without a lawful heir," &c., has occurred; and at the death of *Jesse Harper, junior*, without issue, the title to his share, both real and personal, of his father's estate, vested instantly in the plaintiff. The slaves in question formed no part of the succession of said *Jesse*, and of course no title could be derived under the probate sale. The provision of the will under which plaintiff claims, is an executory devise, according to the laws of Mississippi, where it was made, and where the property affected by it, was located.

It is contended by defendant that this provision, taken in connexion with the previous ones, constitutes an estate tail, which by virtue of the statute of Mississippi, was converted into a fee simple, in *Jesse Harper, junior*, and gave him an absolute property in the slaves claimed by plaintiff. Plaintiff's right is not affected by the statute of Mississippi, converting estates tail into fees simple. This is an executory devise. An executory devise is defined by Blackstone to be "such a disposition by will that thereby no estate vests at the death of the devisor, but only on some future contingency. It differs from a remainder in three very material points. 1st. That it needs not any particular estate to support it. 2d. That by it a fee simple may be limited after a fee simple. 3d. That by this means a remainder may be limited of a chattel interest, after a particular estate for life created in the same." Black. Com. book 2, c. 11. 4 Kent's Com. 269-270.

To show that this is an executory devise, and not affected by the statute of Mississippi, docking entails, we cite the following cases: "A testator devises to A, B and C, his sons; if either of them should die without children, the survivor or survivors to take his share." "This gives a fee simple to the devisees,

and the survivors, on tho death of cither without issue, tako by executory devise." *Richardson* v. *Noyes*, 2 Mass. 56. See also *Lippet* v. *Hopkins*, 1 Gallison, 454. In the case of *Cordle* v. *Cordle*, 6 Munford, 455, the testator after dividing his estate between his sons, W. C. and D. C. provided, "that if either of his sons died without lawful heir, his surviving brother should inherit all the estate of the deceased." Held, that this was a good limitation over in favor of the survivor, upon the death of tho other son without issue. In the case of *Timberlake* v. *Graves*, 6 Munf. 174, where a testatrix bequeathed certain slaves and their increase "to her nephew, J. A., to him and his heirs forever : but in case ho should die without heir, then and in that case to be equally divided between her two neices, M. A. and P. A." Held, it was a good limitation over, upon J. A. dying without issue.

In New York, where the statute converts an estate tail into a fee simple, the validity of an executory devise, and what constitues such a devise, have been well settled. C. devises his real estate to his four sons and a daughter *Elizabeth*, and then adds: "Further my mind and will is that, if any of my said sons, *William, Jacob, Thomas* and *John*, or my daughter *Mary*, shall happen to die, without heirs male of their own bodies, then the lands shall return to the survivors, to be equally divided between them." Held, that these words did not create an estate tail, but a limitation over in fee, to the survivors, on the failure of male heirs. *Fosdick et al.* v. *Cornell*, 1 John. R. 440. A devised as follows: " I give and bequeath to *Catharine* and *Sarah*, each the sum of £12 out of my personal estate, and the remainder to be equally divided among my eleven children ; and if any one or more happen to die without heirs, then his or their part or shares shall be equally divided among the children." Held, that this was a good devise over, by way of executory devise. *Jackson* v. *Studts*, 11 John, 337. See also *Jackson* v. *Blancher*, 3 John. 289, and *Moffatt* v. *Strong*, 10 John. 13. In *Anderson* v. *Jackson*, 16 John. 382, E. devised a farm to his son *Joseph*, his heirs, &c., forever ; and another farm to his son *Medcef*, his heirs, &c. ; and added: " It is my will that if either of my said sons should depart this life without lawful issue, his share or part shall go to the survivor," &c. *Joseph* died without lawful issue. Held, that the words quoted did not create an estate tail, especially since the statute abolishing entails, but was a good limitation over in fee, by way of executory devise, to the survivor, on failure of issue living at the death of either of the sons. In the case of *Jackson* v. *Christman*, 4 Wend. 277, the following clause of a will came up for construction : "I give, devise and bequeath to my six sons, all my real and personal estate, share and share alike, &c.; and if any of the above six should happen to die without heirs, then his or their share shall fall to the survivors of the above named sons, share and share alike." Held, these words were good and effectual, by way of executory devise, to vest in the survivor the share of one dying without issue. That a limitation over to the survivor of persons *in esse*, will be construed as an executory devise. See also *Morgan* v. *Morgan*, 5 Day, 517. *Wilkes* v. *Lion*, 2 Cowen, 333. *Cutter* v. *Doughty*, 23 Wend. 513. *Jackson* v. *Chew*, 12 Wheat. 153. 4 Kent's Comm. 277–8–9. From these authorities it seems clear that the provision of the will of *Jesse Harper*, senior, under which we claim, is an executory devise, and a legal and valid disposition in tho State of Mississippi, where it was made. The majority of tho cases cited also show, that the phrase "dying without heir or heirs," means "dying without issue."

But if our construction were doubtful under the authorities cited, the statues of Mississippi themselves, fully recognise such a disposition as valid, and remove all the difficulties which have, in England, as well as in our sister States, rendered this question of executory devises so difficult and vexed. By sec. 24, H. & H.'s Digest of Miss. laws, p. 348, estates tail are converted into estates in fee simple, with the proviso, however, "that any person may make a conveyance or devise of lands to a succession of donees then living, and the heir or heirs of the body of the remainder-man," &c. Even if this were an estate tail, which it clearly is not, it would not be within the statute, because the plaintiff was a donee then living. But the 26th section of the same statute, H. & H.'s Digest, p. 349, settles the construction of the will beyond all cavil. It provides that: "Every contingent limitation in any deed or will made to depend upon the dying of any person without heirs, or heirs of tho body, or without issue, or issue of the body, or without children, or offspring, or descendant, or other relative, shall be held and interpreted a limitation to take effect when

HARPER v. STANBROUGH.

HARPER
v.
STANBROUGH.

such person shall die, not having such heir, or issue, or child, or offspring, or descendant, or other relative (as the case may be), living at the time of his death, or born to him within ten months thereafter, unless the intention of such limitation be otherwise expressed and plainly declared on the face of the deed." This section settles all the disputes in the books, as to whether the words "dying without heirs, or without issue," &c., mean without heirs or issue living at the time of the death, or an ultimate failure thereof at any future period.   Where the words of the will can be construed in the first sense, then such a provision as we rely upon is admitted by all the authorities, to constitute a good and valid executory devise.   The statute of Mississippi has provided that such a construction shall be given to these words, unless a different intention be expressed and plainly declared in the will.  As to the effect of this statute, see 4 Kent's Comm. (5th edition) 279–280.

The provision, then, under which we claim, was legal and valid under the laws of Mississippi; and upon the death of *Jesse Harper, junior*, without issue, the property bequeathed to him, vested in plaintiff, as the survivor, by way of executory devise.  The property did not go into the succession of *Jesse Harper, junior*, but, immediately on his death, belonged to plaintiff.  As to the extent of plaintiff's right under the devise, see 4 Kent's Comm., 269–270.

*Stacy* and *Sparrow*, for the defendant.  The will of *Jesse Harper, senior*, has never been ordered to be executed by any tribunal of this State, and can not be carried into effect here.   Civil Code, arts. 1637, 1681. If a will, not ordered to be executed, cannot be carried into effect on property, no one can claim any rights upon that property under the will.   It is true that the Supreme Court has held differently in the case of *Johnson* v. *Rannels*, 6 Mart. N. S. p. 522. But that decision was under the old Code, whose provisions on the subject are less strong than those of the present Code.   The decision in the case of *Stewart's Curator* v. *Row*, 10 La. p. 530, has overthrown the doctrine established in *Johnson* v. *Rannels*.  The will contains a *fidei-commissum*, and is on that account void.   Civ. Code, art. 1507.   The property was a short time after the date of the will brought into this State, and had been subject to its laws more than fifteen years previous to the death of *Harper*.  It may be that between the heirs of *Harper*, this disposition would be valid in the State of Mississippi. But the question now to be decided is between third persons, purchasers in good faith, citizens of Louisiana, and one claiming under the will.  Under such circumstances, the court is bound to give effect to the laws of Louisiana.   Story's Conflict of Laws, no. 244.   19 La. p. 217.  2 Mart. N. S. p. 97.

Even by the laws of Mississipi, the limitation on the title to the property in *Jesse Harper*, imposed by the will, did not prohibit him from alienating or encumbering it, and treating it in every respect as his own.  Although a title in fee tail, the statute has made it one in fee simple.   Rev. Code of Mississippi, sec. 24, ch. 9, p. 34; sec. 24, ch. 104, p. 458.   2 Blackstone's Comm. vol. 2, pp. 108, 109, 111, 117.   The former restraints against alienation by the devisee are removed.   If liable to be alienated, it was liable also to be sold for the payment of his debts.

*Bemiss* on the same side.

The judgment of the court was pronounced by

EUSTIS, C. J.   This is a petitory action to recover certain slaves claimed by plaintiff under the will of his father, *Jesse Harper, senior*, and which are alleged to be in the possession of defendant.   The petition alleges that *Jesse Harper, senior*, being then a resident of the State of Mississippi, executed his will on the 9th August, 1811, and soon after died, leaving two sons, *Jesse Harper* and the plaintiff; that by his said will, he made various devises and bequests to his said sons, but upon the express condition that, should said *Jesse* or plaintiff die without lawful heir, the portion devised to him should go to the survivor; that, after the death of his father, *Jesse Harper* took his portion of the slaves bequeathed, and among them those sued for, out of the State of Mississippi into the State of Louisiana, where he, himself, died, without issue, in 1838.   The slaves are held by the defendant under a probate sale of the effects of the succession of the late *Jesse Harper, junior*, who died in Louisiana, in 1838, having

here removed with his slaves in 1823.  The action is for the recovery of the     <span style="float:right">HARPER<br>v.<br>STANBROUGH.</span>
slaves originally belonging to *Jesse Harper, junior*, and their issue.

There was judgment for the defendant, and the plaintiff has appealed.  The
will was admitted to probate in the State of Mississippi.  The clause relied on
by the plaintiff as establishing his right to recover the slaves as his property, is as
follows: " After that I give to my two sons *Jesse* and *William*, all my lands, to be
equally divided between them; if either of my sons should die without a lawful
heir, his part, real and personal, to the surviving one."  This clause is inter-
preted to relate to and include the bequest of slaves, made to the sons in another
part of the will.

It is contended by the cousel for the plaintiff that, the contingency on which
the devise was to take effect in favor of the survivor, has occurred by the death of
of *Jesse Harper* without issue, and that the title to his share of his father's es-
tate vested instantly in the plaintiff; and that the slaves in question forming no
part of the succession of the deceased, no title could be derived under the pro-
bate sale.  The absolute property in the slaves is said to have been vested in the
devisee, subject to the contingency which devolved it exclusively on the surviving
brother.  The difficulty which occurred to us on the argument of this case has
not been overcome.  It is, whether we can recognise the existence of such a
title to slaves as the plaintiff's rights import, conceding that by the laws of Mis-
sissippi he would be held to be the owner of the slaves, and, as such, entitled to
recover them as his property.  On their permanent removal to this State, they
became *immovables* by the effect of law.

The clause in the will of *Jesse Harper, senior*, on which the plaintiff's claim
rests, creates a substitution.  By chapter 4th, of the 2d title, book 3d, of the
Civil Code of 1808, which was in force at the time the slaves in question were
removed *to* this State, in 1823, which treats of *dispositions reprobated by law* in
donations *inter vivos* and *mortis causâ*, substitutions and *fidei-eommissa* are pro
hibited.  The same provisions exist in the Code of 1825, art. 1507.  The nul-
lity of substititions extends even to the instituted heir, donee, or legatee, who
is charged to return a thing to a third person; and the courts of this State have
uniformly given effect to the prohibition, not only as a part of the law but of the
declared and established public polity of the State.  *Cloutier* v. *Lecompte*, 3
Mart. 485.  *Farrar* v. *McCutcheon*, 4 Ib. N. S. 45.  *Mathurin* v. *Livaudais*, 5
Ib. N. S. 302.  *Arnaud* v. *Tarbe et al.* 4 La. 504.

The proper application of the law to the case under consideration presents a
question of importance, and by no means free from difficulty.  It is contended
that the law of Mississippi, having had its full effect on the property in dispute
for several years, the rights of the parties were complete and vested, and can-
not be held to be impaired by its removal to this State, and remaining here for
the time and under the attendant circumstances.

On the other hand, it is urged for the defence, that, under the law of Loui-
siana, no such title in slaves as that under which the plaintiff claims, can be
recognized.

It is the attribute of every government to establish and regulate such modifi-
cations of the rights of property in things within its jurisdiction, as the public
interest requires.  Testamentary substitutions are prohibited in this State.
The prohibition is established in the interest of public order and state policy.
5 Toullier, no. 13.  Discussions du Code Civil, on art. 896 of Napoléon Code, 2d

HARPER
*v.*
STANBROUGH.

vol. pp. 86 et seq. They have always been held null by our courts, the nullity being of that character which is absolute and irremediable.

Nor does it appear material in relation to the nullity of the substitution as the basis of a title, whether the testamentary disposition acts upon the property within this State at the time of its taking effect, or subsequently on the translation of the property to this State. It is the operation of the testamentary disposition on property within the State which the law reprobates, and it is this obnoxious operation of the will of *Jesse Harper, senior*, which the plaintiff seeks to carry into effect through the tribunals of this State. The effect which we give to our own laws on property within our jurisdiction is no more than that which is usual, particularly in relation to this description of property.

Throughout the most populous and powerful States of this Union, the right of property in slaves is not now recognized, except under the provisions of the constitution of the United States, and, in most of them, in the course of their legislation, it has been limited to a term of years, and restricted to slaves *in esse*. They are persons, and their condition and the right of their master to their service depend exclusively on the law of the State under the guarantee of the constitution. It is difficult to imagine on what principle the law of a sister State can have effect on persons and slaves born in this State, and in the service of a citizen and inhabitant. Slaves are considered in Louisiana as immovables. It rests with the legislative power of the State exclusively, to regulate the different descriptions of property or ownership in relation to them. The modifications of the right of property under our laws are few and easily understood, and answer all the purposes of reasonable use. It is incumbent on courts to maintain them in their simplicity. A stranger case could not occur than this, to show the dangers and evil consequences of giving effect, within our own limits, to the complicated and involved jurisprudence upon which the title of the plaintiff has been supported at bar.

We therefore conclude that the title asserted, being a testamentary substitution which was to take effect on the death of *Jesse Harper, junior*, he being domiciliated and dying in this State, and his slaves being, and some of them born, therein, we cannot give it effect.                  *Judgment affirmed.*