(78 South. 482)

No. 21433.

DE MOSS v. SAMPLE et al.

(April 1, 1918.)

*(Syllabus by the Court.)*

1. MINES AND MINERALS ⬤⤳55(1) — SEVERANCE—EXCEPTION.

The elements of ownership in land may be severed. The owner may sell surface rights, and except from the sale the minerals below the surface, and reserve to himself the right to mine those minerals; whether the minerals be in place, like coal, sulphur, etc.; or, whether they be migratory, like oil and gas appear to be.

*(Additional Syllabus by Editorial Staff.)*

2. MINES AND MINERALS ⬤⤳47 — OWNER OF MINERALS.

The ownership of the surface of the earth carries with it the right to the minerals beneath and the consequent privilege of mining and extracting them.

3. DEEDS ⬤⤳137—"EXCEPTION."

An "exception" is of something that is part of the thing granted, existing at the time of the grant, as coal or oil in the land and upon which the grant does not operate and which remains in the grantor.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Exception.]

4. DEEDS ⬤⤳141—"RESERVATION."

A "reservation" is the creation in behalf of the grantor of some new right issuing out of the thing granted, usually an incorporeal hereditament; something which did not exist as an independent right, before the grant.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Reservation.]

Appeal from Eleventh Judicial District Court, Parish of Red River; W. T. Cunningham, Judge.

Jactitation suit by William De Moss against A. N. Sample, S. G. Sample, and the Producers' Oil Company, converted into a petitory action by defendants' claim of ownership to oil and gas and reserved mineral rights. Judgment for defendants, and plaintiff appeals. Affirmed.

Scheen & Blanchard, of Shreveport, for appellant. Hampden Story, of Shreveport, for Producers' Oil Co. Hall & Jack, of Shreveport, for appellees Sample. Foster, Looney & Wilkinson and J. C. Pugh & Son, all of Shreveport, amici curiæ.

SOMMERVILLE, J. This is a jactitation suit brought by plaintiff, who alleges that he acquired title to the land in dispute from two of the defendants, A. N. and S. G. Sample, in the year 1911, and that he has been in quiet possession thereof since that time, until shortly before the filing of this suit, in 1914. He further alleges that the defendants, the two Samples and the Producers' Oil Company, have disturbed him in his possession by entering upon the estate, and by extracting oil therefrom.

Defendants answer, admitting that plaintiff bought the land in question at the time indicated, but allege that in selling to him, the vendors, the two Samples, made this written stipulation in their favor in the deed of conveyance:

"The vendors herein reserving the oil, gas and mineral rights in and to the said described property, with the right of ingress and egress, but such right to be exercised with as little damage as possible in the operation thereof and without damage to crops, buildings and improvements; but, in the event that it should be necessary to damage crops, buildings and improvements in the exercise of the said mineral rights, and the right of ingress and egress, then the vendors or their assigns to pay such damages as may be suffered by the vendee or his assigns."

The action was thus converted into a petitory action by the Samples claiming ownership of the oil and gas in or under the land and of the mineral rights reserved in the transfer of the land by them to plaintiff.

It is contended by plaintiff that by the reservation of the minerals made by defendants, the Samples, in the title deed, in the land or under the surface of the earth, as well as mineral rights, it was not the intention of the parties that plaintiff did not take the land in its entirety; and that the so-called reservation of mineral rights was of an uncertain thing, which could not be sold, and, if passed, was passed without consideration on the part of the defendants.

The defendants, the Samples, entered into a contract of lease with the Producers' Oil Company, wherein all of their rights were transferred to said company; and that company has been made a party defendant.

There was judgment in favor of defendants, and plaintiff has appealed.

[1] The agreement entered into between the parties is clear and unambiguous in its terms. It therefore has the effect of a law upon them, and its terms must be performed in good faith, unless the agreement is in violation of law. As the law does not forbid the owner of land to reserve to himself the minerals lying under the surface thereof, or the right to thereafter enter upon said lands for the purpose of exploring for those minerals, such reservation properly became the subject, or motive, of the contract between the parties.

"Individuals have the free disposal of the property which belongs to them, under the restrictions established by law." C. C. art. 484.

It lies within the power of contracting parties to make any matter material to their contract, if not against the public policy of the state, although such matter may seem to be of little or no value to either party to the contract. When the parties themselves have made certain matters the bases of a contract the courts will not assume to correct the intention or understanding of the parties as to the materiality of such matters. Where parties, in a contract of sale of land, agree that the vendor shall reserve to himself, or except, from the sale the minerals in or under the land, the title to the minerals and the right to explore for them remain in the vendor, and the minerals do not pass to the vendee. Plaintiff cannot be heard to contend that he intended to take the land in its entirety; that neither party supposed that there was oil or gas in or under the land; and that he did not intend to buy the land without the oil and gas, if they were there.

The fact is, plaintiff bought the land, except "the oil, gas and mineral rights in and to the described property." Defendants therefore did not sell, and plaintiff did not buy, "the oil, gas and mineral rights in and to the described property." The title thereto remained in the Samples. There is no law which forbids the owner of land to sever its constituent parts, and sell one or more of those parts and retain the remainder. And, when he does retain or except from the sale a part, there is no consideration due the vendee. The latter did not transfer the part excepted in the sale made to him.

Ordinarily, oil and gas, while in the earth, are not the subject of ownership separate from the soil.

"The ownership of the soil carries with it the ownership of all that is directly above and under it." C. C. art. 505.

But the owner may dismember his ownership and sell his land, excepting and reserving to himself the oil, gas, and mineral rights therein. Or he may sell the coal to one, iron to another, and so on.

There has been little legislation in this state on mining contracts, and there have been few adjudications on the subject. In the Rives Case, 133 La. 178, 62 South. 623, where mineral rights had been granted by the owner of land for a term, the court construed the contract to be a lease; and, in such case, it was said in the syllabus that:

"Oil and gas while in the earth are not the subject of ownership distinct from the soil, and the grant of the oil and gas, therefore, is a grant, not of the oil or gas that is in the ground, but of such part as the grantee may find, and passes nothing except the right to explore for the same under the terms of said contract."

The court did not hold that a sale could not be made of the surface with a reservation of the minerals and the right to explore for them by the vendor. It was there held that a contract for the exploration of lands for minerals, although designated a sale by the parties, was the grant of an exclusive right to search for, take, and appropriate the minerals mentioned in the contract; in other words, it was held to be a lease of land for mining purposes.

The parties to the contract here have agreed that the ownership of the oil and gas should be distinct from the ownership of the soil, or surface of the earth. The vendors did not sell or grant to the vendee the oil and gas in the soil; they excepted them from the sale; and they reserved to themselves and their assigns the right of ingress and egress to explore for and take the oil and gas therefrom. The oil and gas, when reduced to possession by the vendors or their assigns, became the personal property of the vendors or their assigns. Their title then became perfect therein. Until reduced to possession the title was in the Samples. The owners of the surface had no proprietary interest therein.

The parties have divided the property in what might be called horizontal planes. The vendors transferred to the plaintiff all the surface rights on the land, and they reserved to themselves certain planes beneath the surface. It is a common thing for the owner of a portion of the earth's surface or crust to convey the coal or other minerals beneath the surface. Then the owner has parted with a strata or stratum in the midst of what was once his, and he continues to own from the center of the earth to the bottom of the part sold. And from the top of the part sold to the clouds is owned by the vendor. Ordinarily, the sale or leasing of a stratum, by implication, carries with it the right to use as much of the surface as may be actually necessary to mine from the stratum conveyed. That is also true as to the owner who excepts a stratum from the sale of his land to another. In such case, we have what the Code terms "imperfect" ownership; and it is provided in article 2449, C. C., that:

"Not only corporeal objects, such as movables and immovables, live stock and produce, may be sold, but also incorporeal things, such as a debt, an inheritance, the rights, titles and interests to an inheritance, or to any parts thereof, a servitude, or any other rights."

The state Legislature, in act numbered 31, of 1910, p. 50, has fixed the public policy of the state with reference to the severance of the elements of the ownership in land, by providing for and "authorizing the register of land office to sell and convey to the city of Shreveport, the bed of what is known as Cross Lake in the parish of Caddo, and fixing the terms and conditions of such sale, reserving to the state of Louisiana all minerals and mineral rights on and under said lands."

The Legislature could not have been certain that oil and gas were under the lands referred to, or that they would remain there if

they were there; yet, nevertheless, it reserved to the state those minerals, and the right to extract them from the earth, if they were there, without consideration passing to the city of Shreveport.

A sale or reservation of the mineral rights on property, of course, does not constitute a sale or reservation of so many tons of coal, iron ore, barrels of oil, or feet of gas; nevertheless, such a contract may convey or reserve the exclusive right to exploit the property for any of the minerals designated in the act of conveyance or reservation; and to say that such a contract is void for lack of certainty as to the thing sold, or reserved, or contrary to any principle of public policy of the state, would, in a way, relegate the most valuable property in the state to the category of property de hors commerce.

The Legislature, at the same term, proposed a joint resolution, amending article 229 of the Constitution of the state, by providing that:

"Those engaged in the business of severing natural resources as timber and minerals, from the soil or water, whether they thereafter convert them by manufacturing or not, may also be rendered liable to a license tax," etc. Act 154, 1910, p. 234.

Again, that same Legislature, by Act 232, p. 393, authorized the lessees or owners of contracts granting the rights to explore and develop lands for oil, gas, and other minerals, the right to mortgage such leases, or contracts.

At the extra session of 1912, the Legislature submitted a proposed amendment to the Constitution by act numbered 12, p. 13, which provides for the assessment and taxation of property, including "all mines of sulphur, salt, or other minerals, all oil or gas wells, all stone quarries, sand, gravel, or shell pits." And, in the same proposed amendment, it was provided that:

"All operating mines of sulphur, salt, or other minerals, all oil or gas wells, all stone quarries, sand, gravel and shell pits, shall be taxed upon a percentage of the gross value of the product at the mouth of the mine, well, quarry or pit."

The state, by Act 209, 1912, p. 437, as amended by act numbered 10, 1916, p. 37, provided an annual license tax to be paid by persons engaged in "severing natural products, including all forms of timber, turpentine, and minerals, including oil, gas, sulphur and salt from the soil."

And, by Act 296, 1914, p. 605, the police juries of the several parishes were authorized to levy annual license taxes upon persons thus engaged. See, also, Act 144, 1908, p. 200; Act 172, 1910, p. 255; Act 197, 1910, p. 332; Act 254, 1910, p. 423; and Act 296, 1914, p. 605.

It has been usual heretofore to tax real estate as a unit in this state; but, as different elements of the land are capable of being severed and separately owned, the state now authorizes separate assessments against the owners of the several parts. Accordingly, if different parts of land have been severed, and are held by different individuals, the land may be taxed to one, the timber to another; or, land to one, and coal to another, etc. And in the case of Downman v. State of Texas, 231 U. S. 353, 34 Sup. Ct. 62, 58 L. Ed. 264, where the state of Texas brought suit against Downman to collect taxes on "mineral rights," owned by him in 50,000 acres of land, the court held that such assessment was valid where the owner of the surface was also assessed and taxed for the land.

[2] It need not be restated that the ownership of the surface of the earth carries with it the right to the minerals beneath, and the consequent privilege of mining and extracting them. The question here presented is: Do the peculiar substances, oil and gas, which are here involved, the manner in which they are held in their reservoirs, the methods by which and the time when they may be reduced to

actual possession, or become the property of a particular person, cause them to be exceptions to the general principles applicable to other mineral deposits, and hence subject them to different rules? True it is that oil and gas, like other minerals, are situated beneath the surface of the earth; except for that one point of similarity they greatly differ.

"Petroleum, gas and oil are substances of a peculiar character, and decisions of ordinary cases of mining for coal and other minerals which have a fixed situs, cannot be applied to contracts concerning them without some qualifications. They belong to the owner of the land, and are a part of it, so long as they are on it or in it, or subject to his control; but when they escape and go into other land, or come under another's control, the title of the former owner is gone. If an adjoining owner drills his own land and taps a deposit of oil or gas, extending under his neighbor's field, so that it comes into his well, it becomes his property. Brown v. Vandergrift, 80 Pa. 142, 147; Westmoreland Natural Gas Co.'s Appeal, 25 Wkly. Notes of Cas. (10) 103." Brown v. Spilman, 155 U. S. 665, 669, 670, 15 Sup. Ct. 245, 247 (39 L. Ed. 304); Ohio Oil Co. v. Indiana, 177 U. S. 190, 202, 20 Sup. Ct. 576, 44 L. Ed. 729.

Under such conditions, the oil and gas, in their natural state, under the surface of the ground, may be said to be not owned by the owner of the land, until they are reduced to possession by him. If they are reduced to possession by an owner of adjoining land, they belong to him.

The Samples, owners of the land, reserved to themselves the ownership of these substances of a peculiar nature, oil and gas, which were in and under the ground when they transferred the land to plaintiff. And they continued to be the owners thereof until they assigned their rights thereto to their codefendants.

The right to sever the minerals from the surface so as to create a separate estate is as old as is the common law, and is of universal application in this country. It adds value to property, and makes it possible for the owner of the soil to sell and convey the underlying mineral estate, frequently for a large consideration, while he retains the surface for agricultural and other purposes.

And the exception of the minerals from the sale of the land by the vendor does not impose any limitations upon the vendee freely to convey the interest in the land conveyed to him.

In the case of Strother v. Mangham, 138 La. 437, 70 South. 426, where the owner of the land sold to another the oil and gas and the right to prospect therefor, the court held the contract to be legally binding. See, also, Anse La Butte Oil & Mineral Co. v. Babb, 122 La. 415, 47 South. 754; Hanby v. Texas Co., 140 La. 189, 72 South. 933; Fallin v. Stovall, 141 La. 220, 74 South. 911.

It is well settled that when the owner of land conveys to another oil and gas, which have not been developed, that oil or gas becomes property distinct from the "surface," as the expression is in the books. The oil and surface are then distinct properties, under two ownerships; the oil, a real and corporeal property separate from the surface or soil itself. Being a part of the land, and thus owned by the owner of the land, he can sever that ownership, and except or reserve the oil and gas to himself, as was done by the Samples in this case.

"They (oil and gas) are subjects of grant and conveyance—just as much so as coal or stone buried in the soil." Thornton, Oil and Gas, §§ 20, 52.

When thus severed in ownership, the owners own two separate interests, and are not cotenants. When thus severed in ownership, the minerals become a separate entity and their ownership is attended with all the burdens and incidents peculiar to the ownership of land. Oil and gas in place are minerals, and they fall under these principles. Therefore, when the Samples, in the deed to De Moss, reserved the oil and gas and mineral rights, the ownership of those things remained as they had been before, vested in them. De Moss is the owner of the surface, and

the Samples are the owners of the oil and gas, as separate property from the surface. It makes no difference that the oil and gas are fluent and wandering for the present question. The Samples might have lost, or they may lose, the oil and gas by migration from the land. But the oil and gas will be deemed to be in the land for the question before us. The ownership of the oil and gas was in the Samples before De Moss acquired title to the land. The oil and gas were vested in them as a real corporeal entity and property—a solid substantial estate and property, not a mere license to take them—and they remained so after the deed to De Moss. There was no change in ownership.

[3, 4] The deed in this case "reserves," it does not "except," the oil and gas.

" 'Except' would have been the proper word, because an exception is of something that is part of the thing granted, existing at the time of the grant, as coal or oil in the land. The part excepted is already in existence, and is said to remain in the grantor. The grant has no effect upon it. A 'reservation' is the creation, in behalf of the grantor, of some new right issuing out of the thing granted, usually an incorporeal hereditament—something which did not exist as an independent right, before the grant. Sometimes the terms 'exception' and 'reservation' are used synonymously." Tiedeman, R. Prop. 843.

Severance may be by "conveyance of the mines or minerals only, or by a conveyance of the land, with reservation or exception as to the mines or minerals." 20 Am. & Eng. Encyc. of Law (2d Ed.) 772.

It makes no difference whether the word used is "except" or "reserved" the intent being the matter to be considered. Preston v. White, 57 W. Va. 278, 50 S. E. 236.

"A reservation or exception of all the mineral in the tract conveyed is a separation of the estate in the mineral from the estate in the surface. * * * Of course, what is true of a reservation is also true of an exception. In case of either a reservation or an exception, the grantor has a right to enter on the surface with all the usual necessary appliances, to remove the mineral, without any express authority reserved to that effect. In case of a reservation of minerals, such minerals descend to the grantor's heirs." Thornton, § 303, p. 354.

In the case of Minor's Heirs v. City of New Orleans, 115 La. 301, 38 South. 999, where the owner of an interest in a parcel of land fronting the Mississippi river sold said interest to the city of New Orleans, excepting and reserving, however, his interest in all future batture accretions, it was held such a stipulation was a lawful agreement, and should be enforced.

The judgment appealed from is affirmed.

O'NIELL and LECHE, JJ., concur in the decree.