ST. PAUL, J.
Plaintiff is the owner and in possession of a certain 80 acres of land in De Soto parish, acquired by him through mesne conveyances from one Sample. He alleges that the above-named defendant and another are slandering his title to the land by asserting title in themselves to all the minerals in and under said lands.
The other defendant (a lessee, with lease now expired) disclaims all interest in the land or in this controversy; but the claims *486 of the defendant above named are thus set forth, in substance, in the brief filed in its behalf:
“The evidence is this case shows that S. O. Sample was the owner of the surface as well as the minerals beneath the soil, and on February 15, 1904, and while owner of the surface, conveyed all the oil, gas, coal, and other minerals underlying said land, with right of ingress and egress to develop and exploit said minerals, to Louisiana Ooal & Lumber Company; and the Louisiana Coal & Lumber Company, through its liquidating commissioners, likewise conveyed all of the oil, 'gas, coal, and other minerals to J. M. Nabors of date January 22, 1911; and J. M. Nabors on August 14, 1911, likewise conveyed all the oil, gas, coal, and other minerals to Nabors Oil & Gas Company, the present owner of the minerals and one of the defendants herein.
i¡« sjs s*: i'.t í¡í
“The oil and gas, and the surface, are then two distinct properties, under two ownerships; the oil and gas, a real and corporeal property, separate from the surface or the soil itself; and being part of the lands, thus owned by the owner of the land, he can sever the ownership and except or reserve the oil and gas to himself. When thus severed in ownership, the minerals become a separate entity, and their ownership is attended with all the burden and incidents peculiar to the ownership of land. The oil and gas in place are minerals, and they fall under these principles. Severance may be by conveyance of the minerals or mines only, or by conveyance of the land, with reservation of the mines or minerals.”
It will thus be seen that defendant claims what, in many jurisdictions, is termed the “mineral estate,” to wit, a corporeal entity, distinct from and wholly independent of the surface of the soil under which the minerals lie.
On the other hand plaintiff claims that in this jurisdiction the so-called “mineral estate” is a purely incorporeal right, or charge upon the land, to wit, a servitude.
I.
As this court has never denied, and will never deny, to the owner of any land the right to cede to another his own undoubted right to dig, mine, and drill for the minerals beneath the soil and appropriate much as may be found, it follows that for all practical purposes it is quite immaterial whether such mineral estate be a corporeal entity or an incorporeal right (a servitude), except in one fundamental respect.
And that one fundamental respect is this: That if such so-called mineral estate be a corporeal entity, the holder thereof may refrain as long as he pleases from doing any act of ownership, without exposing himself to the loss of his right (O. G. art. 496); whereas, if such so-called mineral estate be only a charge upon the land, i. e. a servitude, the right will be extinguished by nonusage for ten years, i. e. by the prescription of ten years liberandi causa (C. C. arts. 789, 3546).
II.
The matter, therefore, resolves itself into this, whether in Louisiana there can be a corporeal mineral estate in lands.
It is quite certain that nowhere does our statutory law provide for such an estate; and it is equally certain that never in our jurisprudence has any such estate been recognized, unless in the purely obiter expressions to be found in De Moss v. Sample, 143 La. 243, 78 South. 482, and Calhoun v. Ardis, 144 La. 311, 80 South. 548 (as to which see Frost-Johnson Lumber Co. v. Sailing’s Heirs. On Rehearing, 150 La. 756, 91 South. 207).
On the contrary, our civil law, coming to us through Roman, Spanish, and French sources, recognizes but two kinds of estates in lands, the one corporeal and termed ownership, being the dominion over the soil and all that lies directly above and below it (C. C. art. 505); and the other incorporeal and termed servitude (including usufruct), being a charge imposed upon land for the utility of other lands or persons (C. C. arts. 533, 646, 647).
And accordingly this court has always resisted every attempt to introduce into this state any system of land tenures and estates *488 in lands inconsistent with these simple but fundamental principles.
In Harper v. Stanbrough, 2 La. Ann. 377, 382, this court said:
“It rests with the legislative power of the state exclusively, to regulate the different descriptions of property or ownership in relation to them. The modifications of the right of property under our laws are few and easily understood, and answer all the purposes of reasonable use. It is incumbent on courts to maintain them in their simplicity.” (Italics ours.)
In Terrell v. Allen, 7 La. Ann. 46, 47, the court said:
“Our views on this subject [tenures and estates not recognized by our Code] are fully expressed in * * * Harper v. Stanbrough, 2 An. 380. We have constantly before us the danger of deviating from the principles established in that case, and of introducing modifications of the right of property, established by a system of jurisprudence, to which our Code is directly opposed.”
In Succession of Franklin, 7 La. Ann. 395, 412, the court said:
“The title which the testator has attempted to create belongs to. a class of tenures familiar in the other states of this Union, where the common law prevails, but unknown to the laws of Louisiana. And the jurisprudence regulating and defining the almost infinite variety of those tenures, and the rights of obligations arising under each, forms one of the most important and intricate portions of that artificial system of laws. I do not see the possibility of recognizing trust estates here, without letting in all the law which regulates that peculiar tenure of property. Counsel have referred us to no precedent that would authorize or justify the enforcement of such a title; and it is a self-evident proposition, that the constitutional inhibition to the Legislature to adopt any system of foreign laws, by general reference, would be rendered nugatory, if courts of justice assumed the power to introduce those systems, by piecemeal, is this insidious manner.”
And .again (7'La. Ann. 413):
“This opinion. [Harper v. Stanbrough, supra] has since been reviewed and affirmed in • * * Terrell et al. v. Allen, 7 An. 46; and the principle it involves is recognized in every system of jurisprudence. It is thus elucidated by Lord Brougham, in * * * Keppel v. Bailey, 8 English Chancery [Condensed] Reports, pp. Ill, 120; There are certain known incidents to property and its enjoyment; among others, certain bv/rdens wherewith it may be a¶ected, or rights which may be created and enjoyed over it by parties other than the owner, all of which incidents were recognized by law. * * * All these kinds of property, however, all these holdings, are known to the law, and familiarly dealt with by its principles. But it must not, therefore, be supposed that incidents of a novel kind can be devised and attached to property, at the-fancy or caprice of any owner. It is clearly inconvenient to the seience of the law and the public weal, that such latitude shotild be given. There can be no harm in allowing the fullest latitude to men in binding themselves and their representatives — that is, their assets, real and personal, to answer in damages for breach of their obligations. This tends to no mischief, and is a reasonable liberty to bestow; but, great detriment would arise, and much confusion of rights, if parties were allowed to invent new modes of holding and enjoying real property, and to impress upon their lands and tenements a peculiar character, which should follow them into all hands, hotoever remote.” (Quotation italicized by us.)
See the case in full in 2 Mylne & Keen, 517, 535; 39 English Reprint, 19 Chancery Bk. 1042, 1049, wherein Lord Brougham adds:

“Every close, every messuage, might thus be held in a several fashion; and it would hardly be possible to know what rights the acquisition of any parcel conferred, or what obligations it imposed."

And this court further said (Succession of Franklin, 7 La. Ann. 420):
“A man has no more power to create new or prohibited modes of property, in the exercise of his right to make a will, than he has in a .sale or a donation inter vivos. Between parties they may hold their property by any tenure or terms they please; but as to the establishment of titles affecting the property itself, there is no power in man out of the law.” (Italics ours.)
In Xigues v. Bujac, 7 La. Ann. 498, 504, this court said:
“In Louisiana, all titles to land were, and remain- alodial, and not feudal. The feudal law, and its usages, never had a place in this region, under the Spanish government, and the jurisprudence of real property, under the common lav/ cannot be applicable to land titles in this state.” ■ '
*489 In State v. McDonogh’s Executors, 8 La. Ann. 172, 251, the court said:
“The general idea of property under the Roman Law, and under our system, is that of simple, uniform and absolute dominion. The subordinate exceptions of use, usufruct and servitudes are abundantly sufficient to meet all the wants of civilization, and there is no wo/rra/nt of law, no reason of policy, for the introduction of any other.” (Italics ours.)
In Succession of McCan, 48 La. Ann. 145, 159, 19 South. 220, 222, the court said:
“A tenure of property by several minors, with a right of the survivor to take the shares of those who die, would be deemed a novelty in Louisiana. * * * It was tersely put in- one of the numerous decisions of our courts on this subject, that the testator must exert the power the law gives him in conformity with the titles prescribed by ow' la%o, and cannot introduce new tenures. Succession of Franklin, 7 An. 420.” (Italics ours.)
In Choppin v. Dauphin, 48 La. Ann. 1217, 1219, 20 South. 681, 682 (33 L. R. A. 133, 55 Am. St. Rep. 313), the court said:
“The title to immovable property in Louisiana must conform to oicnership, and its modifications prescribed by the Oode.” (Italics ours.)
And the court recognized (page 1221 of 48 La. Ann., page 683 of 20' South. [33 L. R. A. 133, 55 Am. St. Rep. 313]):
“The prohibition in the Code enforced in our jurisprudence of every species of tenure of property except ownership in its fullest significance, and its modifications carefully prescribed by the Code." (Italics ours.)
To the same effect see Female Orphans’ Society v. Young Men’s Christian Ass’n, 119 La. 278, 44 South. 15, 12 Ann. Cas. 811, and authorities there cited.
III.
It will thus be seen: That this court has always emphatically rejected the doctrine that there can be in this state any estate in lands other than (1) simple ownership of the soil; and (2) servitude thereon (including usufruct). That no individual is free to establish any other estate therein, whether by will or by contract. That such inhibition against the establishment of novel estates and new tenures is conformable to general law, and a matter of high public policy.
And we therefore conclude that there is in this state no such estate in lands as a corporeal “mineral estate,” distinct from and independent of the surface estate; that the so-called “mineral estate” by whatever term described, or however acquired or reserved, is a mere servitude upon the land in which the minerals lie, giving only the right to extract such minerals and appropriate them.
IV.
As the evidence in this case shows that the right to dig, bore, or drill for minerals on the land herein involved was never exercised by the defendant or by any one in its behalf, at any time within 10 years before the filing of this suit, it follows that the right to do so is now lost.
Decree.
The judgment appealed from is therefore reversed, and it is now ordered that, defendant’s right to the oil, gas, coal, and other minerals underlying the east half of the northwest quarter of section 21 in township 12, range 12, De Soto parish, be declared lost by the nonuse thereof for 10 years, and that plaintiff’s title to said land be recognized and declared to be unincumbered by any such rights in defendant; said defendant to pay costs of both courts.
O’NIELL, C. J., subscribes to the decree.
LAND, J., dissents.
OVERTON, J., dissents in so far as repeats the ruling maintaining the plea of prescription with respect to solid minerals, and the rejection of the claim of the Nabors’ Oil & Gas Company to the same.