### UNION PRODUCING CO. v. PARKES.
### No. 123.

District Court, W. D. Louisiana,
Monroe Division.

Dec. 23, 1940.

164

Sholars & Gunby, and Frank O. Looney, all of Monroe, La., for plaintiff.

Oliver & Digby, of Monroe, La., for defendant.

DAWKINS, District Judge.

Basing jurisdiction of this court upon diverse citizenship, plaintiff seeks, first, a declaratory judgment that it is the owner of the mineral rights under some fifty acres of land, unaffected by any question of prescription in the state law, and in the alternative (1) to recover damages in the sum of $7,222.22 with interest, and (2) a decree relieving it from the terms of a rental provision as to other lands and from the obligation to furnish gas to defendant at a named price.

Defendant filed pleas of prescription and of no cause of action, and subject thereto an answer to each article of the petition specifically. Thereafter, an amended petition was filed, as to which, by agreement these exceptions and motions are also to apply.

The plea of prescription is based upon Article 789 of the Louisiana Civil Code and the decisions of the state courts to the effect that any conveyance or reservation of an interest in the minerals vests only a servitude, apart from the fee, which is prescribed after a lapse of ten years, unless ex-

ercised or extended by express written agreement.

Counsel have stipulated the correctness of the contract sued upon, attached to and made part of the petition, that no drilling or other development has been had upon any of the property covered thereby; but that annually, since its execution, defendant has exercised the privilege of renting the cultivatable portion of the property described, other than the fifty acres upon which the mineral rights are involved here, and has likewise exercised an option to purchase gas for his domestic use at the price of five cents per thousand, all as provided in the contract.

The exception of no cause of action appears to be directed first, to the petition as a whole, and secondly, to the alternative demand.

The contract of conveyance is dated February 16, 1929, and the petition in this case was filed July 19, 1939, or some six months more than ten years after its execution. It conveyed a body of land of some four hundred acres in fee simple, and as to the property here involved, recited: "Less and except the following: Fifty (50) acres of land surrounding the residence now occupied by said vendor, which 50 acre tract is especially retained by vendor herein, and excepted from this sale, being more accurately described as follows:" (There then follows a long surveyor's technical description by metes and bounds of the fifty acres surrounding vendor's home and reserved as a home site.)

The following is further quoted therefrom: "b. Oil, Gas and Mineral Rights: All of the oil, gas and minerals lying and being in, on or under the following described land, to-wit: Fifty (50) acres of land surrounding the residence now occupied by said vendor, and more accurately described as follows:"

Other pertinent provisions are as follows:

"The oil, gas and mineral rights in on and under the above described fifty (50) acres of land are sold along with the land herein sold as a part of the same tract, and it is specifically understood by the vendor and vendee that the drilling of a well on any part of the said land shall be construed, as the drilling of a well on this fifty (50) acre tract as against a plea of prescription based on the non-development of this fifty (50) acre tract, but regardless of any construction that any court may hereafter place upon this paragraph it is specifically understood that the vendee shall have the full period of thirty (30) years from the date hereof within which to begin developments on this fifty (50) acre tract of land.

"The reference herein to batture rights and rights of accession and accretion, and to Curtis Island in Isle Lake, are not and shall not be understood to be words of enumeration and limitation, but only a reference to these specific rights, leaving to the grantee all the rights accruing to it hereunder, the intention being that the grantor keeps and does not convey the fifty (50) acres herein described, but that the grantee acquires all the land except the fifty (50) acres and the oil, gas and mineral rights of the whole tract, together with all the rights of accretion accruing to the whole tract."

\*     \*     \*     \*     \*

"The parties hereto have and do hereby further covenant and agree:

"1. That the Industrial Gas Company agrees to lease and does lease to the said Jule Parks, or to his wife, or to his children, for farm purposes, all the land now in cultivation that it has acquired herein from the said Jules Parks, at a price of One ($1.00) Dollar per acre per year. Lessee shall keep the fences up and the cabins in repair, and the Industrial Gas Company shall be at no expense except the payment of taxes on the said land.

"For the year 1929 no rent shall be paid and thereafter this lease shall remain in force from year to year at the option of the said lessee, provided, that in the event the Industrial Gas Company desires to use or occupy or to sell or dispose of all or any part of this land it may terminate this lease as to that part that it wants to use, occupy, sell or dispose of, upon one years notice.

"This lease is not assignable and extends only to the said Jules Parks, his widow or his children.

"2. That the Industrial Gas Company will furnish and supply to the said Jule Parks, his widow or his children, gas for his residence and plantation cabins on Baker and Loch Lomond plantations at five (5¢) cents per 1,000 cubic feet, measured at the well on a pressure of 10 ounces above an atmospheric pressure of 14.4 pounds. This agreement will continue in force at the option of the said Jule Parks so long as the said Industrial Gas Company produces gas from the land, and mineral rights

herein sold or from other gas wells owned by the said Industrial Gas Company that the said Jule Parks may desire to receive the said gas from. The said Jule Parks shall connect his pipe lines at his own expense to the gas wells from which he is being furnished gas.

"3. In the event that said Jule Parks at any time desires to sell the fifty (50) acres of land herein reserved or kept by him, the gas and mineral rights under which are herein sold to the Industrial Gas Company, he agrees to give the Industrial Gas Company the preference right to buy said land at the same price that any one else is willing to pay for it. If an offer is made to the said Jule Parks that he is willing to take he shall then notify in writing the Industrial Gas Company the sum that he has been offered, saying that the Industrial Gas Company may have ten days from the date of notice to take the property at that price. If not taken within that time he shall have the right to sell at the offer made to him."

It will be noted that the contract does not specifically state that the two options to rent the cultivatable land and to purchase gas for domestic use by Parkes, is part of the consideration for the attempted extension to 30 years of the time within which the vendee could explore for minerals upon the 50 acres, but it may be assumed that all advantages accruing to the vendor were stipulated in return for benefits given. It is also well to note that the latter did not bind himself to either use or pay rent for the cultivatable lands of $1 per acre per year, or to take and pay for the gas at the rate fixed, but these were merely options running in his favor, specifically restricted to him and could not be transferred in any subsequent conveyance of the fee to the 50 acres. It was likewise provided, as the language above quoted discloses, that in event the vendee should sell the lands, title to which were conveyed in fee, it might terminate the lease thereon for purposes of cultivation as to "that part that it wants to use, occupy, sell or dispose of upon one years notice."

■■■■ It is the settled law of Louisiana, and the plaintiff so concedes, that rights such as are claimed here, are lost if not exercised within ten years, and that to constitute an acknowledgment having the effect of extending them beyond that period, the owner of the fee must ordinarily, in writing, clearly indicate a purpose to so extend. However, it does contend that in the present case, the defendant is estopped from availing himself of the benefits of this prescription because he has continued to lease the cultivatable land on the 400 acres at $1 per acre (alleged to be only a nominal rental) and to receive gas for domestic purposes at the rate of five cents per thousand cubic feet (likewise alleged to be nominal). In the first place, it is necessary to consider the principle underlying the civil law of land titles and its relation to this type of servitude. In order to insure simple and unentailed or uninvolved titles to real estate, it is the policy of this law, that there should be no encumbrances which shall prevent the running of the two major periods of 10 and 30 years over which a complete and indefeasible title to all of the elements of ownership in land may be acquired. See La. Civil Code, Arts. 488, 498, 505.

"Our laws are marked by the simplicity of the titles by which property is held, and are utterly opposed to the suspended and uncertain ownership incident to substitutions, or the system of entails of the Common law. * * *" Succession of McCan, 48 La.Ann. 145, at page 158, 19 So. 220, at page 221.

See, also, Wemple v. Nabors Oil & Gas Co. et al., 154 La. 483, 97 So. 666, 667, where the jurisprudence of the state is reviewed, and, speaking through Justice St. Paul, the following conclusion is announced:

"As this court has never denied, and will never deny, to the owner of any land the right to cede to another his own undoubted right to dig, mine, and drill for the minerals beneath the soil and appropriate much as may be found, it follows that for all practical purposes it is quite immaterial whether such mineral estate be a corporeal entity or an incorporeal right (a servitude), except in one fundamental respect.

"And that one fundamental respect is this: That if such so-called mineral estate be a corporeal entity, the holder thereof may refrain as long as he pleases from doing any act of ownership, without exposing himself to the loss of his right (C.C. art. 496); whereas, if such so-called mineral estate be only a charge upon the land, i. e., a servitude, the right will be extinguished by nonusage for ten years, i. e. by the prescription of ten years liberandi causa (C.C. arts. 789, 3546).

"The matter, therefore, resolves itself into this, whether in Louisiana there can be a corporeal mineral estated in lands.

"It is quite certain that nowhere does our statutory law provide for such an estate; and it is equally certain that never in our jurisprudence has any such estate been recognized, unless in the purely obiter expressions to be found in De Moss v. Sample, 143 La. 243, 78 So. 482, and Calhoun v. Ardis, 144 La. 311, 80 So. 548 (as to which see Frost-Johnson Lumber Co. v. Salling's Heirs, 150 La. 756, 91 So. 207. On rehearing.

"On the contrary, our civil law, coming to us through Roman, Spanish, and French sources, recognizes but two kinds of estates in lands, the one corporeal and termed ownership, being the dominion over the soil and all that lies directly above and below it (C.C. art. 505); and the other incorporeal and termed servitude (including usufruct) being a charge imposed upon land for the utility of other lands or persons (C.C. arts. 533, 646, 647)."

Under the first, one who takes possession by a written instrument, translative of property, in good faith, without knowledge of defects, acquires a perfect title, as does the second, after 30 years of continuous uninterrupted possession alone, whether in good faith or not. With respect to the transfer or retention of the minerals, when the title is held by someone else, the owner of the mineral estate can preserve it only by the exercise of the rights conveyed, to-wit, going upon, exploring, drilling or digging for the minerals. This requires an affirmative act on his part and not by the inaction or doing of something else by the owner of the debtor estate.

It is not possible to circumvent the law, as has apparently been attempted here, for to sustain such an agreement would make it possible for parties willing to do so to tie up the minerals for fifty or a hundred years by the simple expedient of not making such rights optional with the vendor, but by specifically providing that he or any subsequent holder of the fee should for such periods cultivate and pay rent and receive gas at the rate fixed, as a part, expressly, of the consideration for the purchase of the property. If this could be done, there would seem to be no reason why a provision for the payment of yearly rentals of a substantial amount for the mineral rights over those long periods could not be made and so long as the vendor continued to accept such payments, the prescriptions would not begin to run, thus avoiding the exercise of use of the servitude. The decisions of the state courts are to the effect that if there be a written acknowledgment which clearly evinces a purpose to extend the servitude, then a new period of 10 years begins with each such written acknowledgment, and the same would seem to be true if it were permissible to keep it alive by the mere paying of yearly rentals. Of course, in making a contract such as that under consideration here, both parties must be presumed to have known that the law limited the period within which the servitude could be exercised to a period of 10 years; and, I think, it follows that what was paid or received by the vendor was for the privilege of these rights within that time.

What has been said above, I believe, applies with equal force to the allegation of the petition that ⅑th or $7,222.22 of the total consideration of $65,000 paid for the 400 acres in fee and the 50 acres of mineral rights, has failed. The terms of the contract of course, control, and there appears to be nothing therein which even attempts to make such an attribution of this consideration. On the contrary, the privileges of rental and purchase of gas were wholly optional with the vendor, and he also being bound by the law, was charged with notice that he could not enforce such an agreement beyond the 10-year period. The petition does not disclose any controversy between the parties as to these latter rights, but it only incidentally and in the alternative seeks to have it decreed that, if Parkes claims the benefit of prescription and it is sustained, then it be decreed that he can no longer exercise these privileges. It will be time enough, if and when the judgment becomes final in this case, the vendor should attempt to assert such rights, to seek relief therefrom. In event of court action for that purpose, the plaintiff in the present case would need only to plead the same prescriptive period, or under the terms of its contract could put an end thereto by giving the stipulated notice of a purpose to do so.

The pleas of prescription and no cause of action should be sustained and the suit dismissed at plaintiff's cost.

Proper decree should be presented.